**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br>United States Department of Justice<br>Antitrust Division, Litigation I Section<br>450 Fifth Street, N.W.<br>Suite 4100<br>Washington, DC 20530,<br><br>                           *Plaintiff*,<br>     v.<br><br>GRUPO BIMBO, S.A.B. de C.V.<br>Prolongacion Paseo de la Reforma No. 1000<br>Col. Pena Blanca Santa Fe<br>Delegacon Alvaro Obregon<br>Mexico D.F., 01210 Mexico,<br><br>BBU, INC.<br>225 Business Center Drive<br>Horsham, Pennsylvania 19044,<br><br>and<br><br>SARA LEE CORPORATION<br>3500 Lacey Road,<br>Downers Grove, Illinois 60515,<br><br>                       *Defendants.* | CASE NO.:<br><br><br>JUDGE: |

## <u>COMPLAINT</u>

The United States of America ("United States"), acting under the direction of the

Attorney General of the United States, brings this civil action to enjoin the proposed acquisition

of the North American Fresh Bakery business of Defendant Sara Lee Corporation ("Sara Lee")

by Defendants Grupo Bimbo S.A.B. de C.V. ("Grupo Bimbo") and BBU, Inc. (collectively

"BBU"), and to obtain other equitable relief.  The acquisition would likely substantially lessen

competition in the market for sliced bread in eight relevant geographic markets in the United

States, in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18, and result in higher prices for

consumers of sliced bread in these markets.  The United States alleges as follows:

## I.  NATURE OF THE ACTION

1.      On November 9, 2010, BBU agreed to acquire the North American Fresh Bakery

business of Sara Lee (by acquiring all of the shares of Sara Lee Bakery Group, Inc. and Sara Lee

Vernon LLC).

2.      BBU and Sara Lee compete in the sale of sliced bread, which they sell under a

variety of well-known brands.  They are among the four largest sellers of sliced bread in the

eight relevant geographic markets alleged below; in four of the relevant geographic markets, they

are the two largest.

3.      BBU and Sara Lee compete aggressively with each other in the relevant markets.

The head-to-head competition between the companies results in lower prices for consumers and

improved service to retailers.

4.      As alleged in greater detail below, the proposed acquisition would substantially

increase concentration among sellers of sliced bread in each of the relevant geographic markets

and eliminate the substantial head-to-head competition between BBU and Sara Lee, likely

leading to higher prices and reduced service, and substantially lessening competition in the sale

of sliced bread in the relevant markets.  Therefore, the proposed acquisition violates Section 7 of

the Clayton Act.

## II.  JURISDICTION, VENUE, AND INTERSTATE COMMERCE

5.      The United States brings this action pursuant to Section 15 of the Clayton Act, as

amended, 15 U.S.C. § 25, to prevent and restrain Defendants from violating Section 7 of the

Clayton Act, 15 U.S.C. § 18.  The Court has subject-matter jurisdiction over this action pursuant

to Section 15 of the Clayton Act, 15 U.S.C. § 25, and 28 U.S.C. §§ 1331, 1337(a), and 1345.

6.     BBU and Sara Lee manufacture, market, and sell sliced bread and other consumer

products in the flow of interstate commerce, and their production and sale of these products

substantially affect interstate commerce.  BBU and Sara Lee transact business and are found in

the District of Columbia, through, among other things, the sale of consumer products to grocery

stores in this District.  Venue is proper in this District for Sara Lee and BBU, Inc. under Section

12 of the Clayton Act, 15 U.S.C. § 22.  Venue is proper in this District for Grupo Bimbo, a

Mexican corporation, under 28 U.S.C. § 1391(d).

7.     Defendants have consented to personal jurisdiction and venue in this judicial

district.

**III.  THE DEFENDANTS**

8.     Grupo Bimbo is a corporation organized under the laws of Mexico, with

headquarters in Mexico City.  It controls BBU, Inc., a Delaware corporation headquartered in

Horsham, Pennsylvania, through which Grupo Bimbo carries out its baking business in the

United States, including but not limited to sliced bread.  Grupo Bimbo had more than $8 billion

in worldwide sales in 2009.  In the same year, BBU's sales in the United States totaled

approximately $3.9 billion.  BBU sells sliced bread under a variety of national and regional

brand names, including Bimbo, Arnold, Brownberry, Oroweat, Roman Meal, Freihofer's,

Maier's, Mrs Baird's, Stroehmann, and Weber's.  BBU also makes and sells Thomas' English

muffins and Entenmann's sweet baked goods.

9.     Sara Lee is a corporation organized under the laws of Maryland, with

headquarters in Downers Grove, Illinois.  Sara Lee had more than $10 billion in worldwide

revenues in fiscal 2010.  That year, Sara Lee's North American Fresh Bakery division had

approximately $2.1 billion in sales.  Sara Lee sells sliced bread under a variety of brand names,

including the "Sara Lee" brand family (including Sara Lee, Sara Lee Classic, Sara Lee Soft &

Smooth, Sara Lee Hearty & Delicious, and Sara Lee Delightful), EarthGrains, and regional

brands such as Milton's, Mother's, Grandma Sycamore's, Rainbo, San Luis Sourdough, Old

Home, and Holsum.

## IV.  RELEVANT MARKETS

### A. Relevant Product Market—Sliced Bread

10.     The relevant product market is no broader than sliced bread.  "Sliced bread," as

the term is used in the industry and in this Complaint, is fresh sliced and bagged loaf bread sold

by supermarkets, mass merchandisers (such as Wal-Mart), club stores (such as Costco), other

grocery stores, and convenience stores.  For purposes of this Complaint, "sliced bread" does not

include breakfast breads (such as raisin bread or cinnamon swirl), buns and rolls, bagels or

English muffins, or products sold by in-store bakeries.

11.     There is substantial variety and differentiation among sliced-bread products.

Sliced breads vary in price, brand, flavor, texture, nutritional content, ingredients (*e.g.*, the

inclusion or exclusion of sweeteners or artificial ingredients), and other factors.  Sliced breads

range from traditional white bread to a wide variety of wheat and whole grain breads, rye,

sourdough, and other varieties.

12.     Sliced breads also vary in shape.  "Traditional" breads are baked in longer,

narrower loaf pans and are often used as sandwich bread; "wide pan" breads are shorter and

wider (and typically denser) than traditional breads.  Traditional breads are often targeted to

families with younger children.  Wide pan breads are marketed as having greater nutritional

value, and are typically sold at higher prices than traditional breads.

13.     Sliced breads include both branded products, which bear a brand owned by or

licensed to the baker (such as BBU's Arnold or Sara Lee's EarthGrains), and private-label

products, which bear a brand owned by the retailer (such as Wal-Mart's Great Value).  Large

baking companies, including BBU and Sara Lee, make and sell both branded and private-label

bread.

14.     Industry participants consider sliced breads to be a distinct set of products from

other bakery products.  Sliced bread sellers monitor the prices of competing sliced-bread

products and set the prices of their sliced-bread products accordingly, and do not typically set

sliced-bread prices based on prices of consumer products other than sliced bread.

15.     There are no adequate substitutes for sliced bread for most consumers.  Most

consumers purchase sliced bread to make sandwiches or toast, among other uses.  Consumers are

unlikely to substitute other bakery or food products for sliced bread for these and other uses.

Therefore, a hypothetical monopolist producer of sliced bread would find it profitable to increase

its prices by a small but significant and non-transitory amount.  Accordingly, sliced bread is a

relevant product market and a line of commerce within the meaning of Section 7 of the Clayton

Act.

**B.  Relevant Geographic Markets**

16.     The metropolitan and surrounding areas of San Diego, Los Angeles, San

Francisco and Sacramento, California; Kansas City, Kansas; Omaha, Nebraska; Oklahoma City,

Oklahoma; and Harrisburg/Scranton, Pennsylvania, each are relevant geographic markets.

17.     The relevant geographic markets for analyzing the effects of this acquisition on competition are best defined by reference to the locations of the retailers that purchase sliced bread for sale to consumers, rather than by the location of bakeries.  This approach to defining the relevant geographic markets is appropriate because bakers can price discriminate to their retailer customers based on location—i.e., price differently to retailers in different locations based on local competitive conditions—and the retailers cannot defeat these price differences through arbitrage.

18.     Where sellers can successfully price discriminate based on customer location, the goal of geographic market definition is to identify the area encompassing the locations of potentially targeted customers.  The relevant geographic markets identified above encompass the locations of retailers that could likely be targeted for price increases for sliced bread as a result of this transaction.  For each of these geographic markets, the participants in each market are those sellers who currently sell sliced bread into that area, regardless of the location of the sellers' production facilities.

19.     Arbitrage across each of these geographic areas is unlikely to occur.  Arbitrage would occur if a retailer in a higher-priced area were supplied with goods that had been sold to a retailer in a lower-priced area.  Arbitrage of sliced bread between metropolitan areas is prohibitively costly because the retailer would incur substantial transportation costs to ship bread from another retailer to its store locations.  In addition, arbitrage would be costly because it would require retailers to forego the "direct store delivery" ("DSD") services provided by the bakery, which include delivering bread up to five times a week, stocking their shelves and displays, and removing stale or dated loaves.

20.     Accordingly, a hypothetical monopolist seller of sliced bread to retailers in each of the eight geographic areas identified in Paragraph 16 would find it profitable to increase its prices by a small but significant and non-transitory amount.  Therefore, the geographic areas identified in Paragraph 16 are relevant geographic markets and "sections of the country" within the meaning of Section 7 of the Clayton Act.

## V.  LIKELY ANTICOMPETITIVE EFFECTS

21.     Each of the relevant markets for sliced bread would be highly concentrated, and concentration would increase substantially in each of the relevant markets, as a result of the acquisition.  Specifically,

      a.      In San Diego, Defendants are the two largest sellers of sliced bread, with a combined market share of approximately 63 percent (in dollars).

      b.      In Los Angeles, Defendants are the two largest sellers of sliced bread, with a combined market share of approximately 58 percent.

      c.      In San Francisco, BBU is the largest seller of sliced bread, and Sara Lee is the third largest, with a combined market share of approximately 56 percent.

      d.      In Sacramento, Defendants are the two largest sellers of sliced bread, with a combined market share of approximately 59 percent.

      e.      In Kansas City, Sara Lee is the largest seller of sliced bread, and BBU is the third largest, with a combined market share of approximately 52 percent.

      f.      In Omaha, Sara Lee is the largest seller of sliced bread, and BBU is the third largest, with a combined market share of approximately 52 percent.

      g.      In Oklahoma City, Sara Lee is the largest seller of sliced bread, and BBU is the fourth largest, with a combined market share of approximately 53 percent.

h.      In Harrisburg and Scranton, Defendants are the two largest sellers of sliced bread, with a combined market share of approximately 56 percent.

22.     BBU and Sara Lee compete vigorously in the sale of sliced bread in the relevant geographic markets on price, promotions, variety, flavor, texture, shape, nutrition, and ingredients.  They compete for retailers' business and for shelf and display space in retailers' stores by, among other things, offering lower wholesale prices and larger promotional discounts, which lower the prices paid by consumers of sliced bread.

23.     Consumers vary in their preferences for particular sliced bread products, and bakers and retailers offer a wide variety of sliced bread products to meet consumer preferences. Consumers consider many factors when choosing sliced-bread products, including brand, flavor, texture, nutritional content, shape, ingredients, and price.  BBU and Sara Lee each make and sell a wide variety of sliced-bread products, under a portfolio of brands that have been developed over many years, to meet this diverse consumer demand.

24.     Bread brands convey information to consumers regarding quality, value, nutrition, and other attributes, and are an important factor in many consumers' buying decisions.  Branded sliced breads typically sell at significantly higher prices than similar private-label sliced breads, indicating that many consumers value the qualities they associate with branded sliced breads.

25.     BBU's wide-pan variety breads, sold under the Oroweat and Arnold brands in the relevant markets, are similar in shape, flavor, texture, image, and price to Sara Lee's wide-pan variety breads sold under the Sara Lee Hearty & Delicious and EarthGrains brands in the relevant markets.  Similarly, Sara Lee sells traditional soft white and wheat bread in the relevant markets under the Sara Lee Soft & Smooth brand and other brands, which are similar in shape,

flavor, texture, image, and price to traditional soft white bread sold by BBU under the Bimbo, Mrs Baird's, Stroehmann, Freihofer's, Weber's, and other brands in the relevant markets.

26.     BBU and Sara Lee recognize that many of their sliced-bread products are close substitutes for each other's products, and a significant number of consumers in the relevant markets regard BBU and Sara Lee branded sliced-bread products as their first and second choices in sliced-bread products.

27.     The acquisition would eliminate the substantial head-to-head competition between BBU and Sara Lee for sliced-bread sales to retailers and consumers, and allow BBU profitably to raise price and decrease the services that it provides to retailers in the relevant markets.

28.     A price increase by BBU in a relevant market likely would result in the loss of substantial sales to Sara Lee, because, as previously alleged, a substantial number of consumers view BBU and Sara Lee breads as close substitutes.  Prior to the acquisition, BBU would have lost the profits on the sales it loses to Sara Lee (and others) as a result of such a price increase. Following the acquisition, BBU would own the Sara Lee products, and would retain the profits that it would otherwise lose when consumers switch to Sara Lee products, in addition to earning higher profits on the sale of BBU products, which it would retain.  Because those sales of Sara Lee products are likely profitable, a price increase by BBU would be profitable after the acquisition.  The same profit motive would apply to an increase in the prices of Sara Lee bread, recaptured through sales of BBU bread.  Therefore, BBU likely would unilaterally raise prices as a result of the acquisition.

29.     The significant increase in market concentration that the proposed acquisition would produce in the relevant markets, combined with the loss of head-to-head competition

between BBU and Sara Lee, is likely to substantially lessen competition in violation of Section 7 of the Clayton Act, resulting in higher prices for retailers and consumers of sliced bread.

## VI.  ABSENCE OF COUNTERVAILING FACTORS

### A.      Entry

30.      Responses from competitors and new entry are unlikely to prevent the acquisition's likely anticompetitive effects.  Barriers to entering these markets include: (i) the substantial time and expense required to build a brand reputation to overcome existing consumer preferences; (ii) the substantial sunk costs for promotional and advertising activity needed to secure the distribution and placement of a new entrant's sliced-bread products in retail outlets; (iii) the difficulty of securing shelf-space in retail outlets; (iv) the time and cost of building new bakeries and other facilities; and (v) the time and cost of developing delivery routes.

### B.      Efficiencies

31.      The proposed acquisition is unlikely to generate verifiable, merger-specific, cognizable efficiencies sufficient to reverse the likely competitive harm of the acquisition.

## VII.   VIOLATION ALLEGED

32.      The United States hereby repeats and realleges the allegations of paragraphs 1 through 31 as if fully set forth herein.

33.      BBU's proposed acquisition of Sara Lee would likely substantially lessen competition in interstate trade and commerce, in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18, and would likely have the following effects, among others:

> a)   actual and potential competition in the relevant markets between BBU and Sara
>      Lee for sales of sliced bread would be eliminated; and

b)  competition generally in the relevant markets for sliced bread would be substantially lessened.

## VIII.  REQUEST FOR RELIEF

The United States requests:

a)  That the Court adjudge the proposed acquisition to violate Section 7 of the Clayton Act, 15 U.S.C. § 18;

b)  That the Court permanently enjoin and restrain the Defendants from carrying out the proposed acquisition or from entering into or carrying out any other agreement, understanding, or plan by which Sara Lee would be acquired by, acquire, or merge with BBU;

c)  That the Court award the United States the costs of this action; and

d)  That the Court award such other relief to the United States as the Court may deem just and proper.

Dated:  October 21, 2011                     Respectfully submitted,

FOR PLAINTIFF UNITED STATES:


  /s/     Sharis A. Pozen                              /s/     Michelle Seltzer
SHARIS A. POZEN (DC Bar #446732)            Michelle Seltzer*  (DC Bar #475482)
Acting Assistant Attorney General for             Attorney
Antitrust                                         Litigation I Section
                                                  Antitrust Division
                                                  U.S. Department of Justice
  /s/     Patricia A. Brink                       450 Fifth Street, N.W., Suite 4100
PATRICIA A. BRINK                                 Washington, DC  20530
Director of Civil Enforcement                     Telephone: (202) 353-3865
                                                  Facsimile: (202) 307-5802
                                                  E-mail: michelle.seltzer@usdoj.gov
  /s/     Joshua H. Soven
JOSHUA H. SOVEN (DC Bar #436633)            Alvin Chu
Chief                                             Barry Creech (DC Bar #421070)
PETER J. MUCCHETTI (DC Bar #463202)         Scott Fitzgerald
Assistant Chief                                   Adam Gitlin
Litigation I Section                              Peter Gray
                                                  David Gringer
                                                  Ryan Kantor
                                                  David Kelly
                                                  Richard Liebeskind (DC Bar #479309)
                                                  Mark Merva (DC Bar #451743)
                                                  Julie Tenney
                                                  Kevin Yeh

                                                  Attorneys for the United States


                                                  *Attorney of Record